UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH | * | CIVIL ACTION NO.: |
| OF 2000 BELLE CHASSE HIGHWAY, | * | |
| GRETNA, LOUISIANA ON | * | |
| SEPTEMBER 23, 2010 | * | SECTION: |
| | * | |
| | * | |
| | * | JUDGE: |
| | * | |
| | * | MAGISTRATE: |

************************************

\* UNDER SEAL \*

**MEMORANDUM IN SUPPORT OF MOTION FOR RETURN OF PROPERTY**

I.  **INTRODUCTION**

On September 23, 2010, the Government unlawfully searched 2000 Belle Chasse Highway, Gretna, Louisiana. This building houses seven separate businesses and, during the course of the search, the Government illegally seized documents, computers, and other materials from all seven of these businesses.

The search and seizure were unlawful for several reasons. First, the search warrant only permitted the Government to enter one business: "the offices of River Birch Landfill."[1] *See* Ex.

---

[1] Although the warrant authorized the search of "the offices of River Birch Landfill," River Birch Landfill is not an entity. River Birch, Inc., a Louisiana corporation, owns and operates a landfill. The landfill's offices are located on Highway 90 in Waggaman, Louisiana, not on Belle Chasse Highway.

"A". Despite this clear limitation on the face of the search warrant, the Government improperly searched six additional businesses, two of which were law firms, and seized property that included a substantial volume of business and attorney-client privileged materials. Consequently, any property taken from the law offices of Peter J. Butler, L.L.C.; the law offices of Heebe & Heebe, P.L.C.; the offices of Shadowlake Management, L.L.C.; the offices of Willow, Inc.; the offices of Fred Heebe Investments; and the offices of Live Oak Homes Corporation was unlawfully seized and must be returned immediately.

Secondly, even if the Government had authority to search the entire building – and it clearly did not – the Government seized a significant amount of property that was far beyond the scope of the warrant. Not only was this seized property not referenced in the warrant, much of it was obviously irrelevant to the Government's investigation. For example, office inventories prepared by Petitioners following the search demonstrate that the Government arbitrarily seized any computer that it found, regardless of who owned the computer or what information it contained; 20 years of Shadowlake Management, L.L.C.'s leases (which include personal data and financial information of thousands of tenants); Peter J. Butler's personal financial information, including access codes to his investment accounts; and financial statements and occupancy reports of several apartment complexes. Moreover, the Government's inventory and receipt for the seized materials is woefully inadequate. Because, the Government's search receipts make no reference to many of the items taken in the search, it is impossible for the Petitioners to determine the full extent of the Government's violations. A return of all the seized property is therefore an appropriate remedy.

Finally, the Government improperly searched and seized attorney-client privileged documents even after being advised of these documents' privileged nature by counsel for

Petitioner Frederick R. Heebe. For these reasons, and as more fully discussed below, Petitioners respectfully request this Court to order the Government to return all property unlawfully seized from 2000 Belle Chasse Highway on September 23, 2010.

## II. FACTUAL BACKGROUND

### A. *The Building and the Seven Businesses*

On September 22, 2010, United States Magistrate Judge Louis Moore, Jr. signed a search warrant for the offices of "River Birch Landfill." Ex. "A." The warrant identified the property to be searched as "2000 Belle Chasse Highway, Gretna, Louisiana 70056 (further described in Attachment A)." Attachment A to the warrant states: "The offices of River Birch Landfill are located at 2000 Belle Chasse Highway, Gretna, Louisiana, 70056. It is a three-story beige brick building with a sign in front that states River Birch Inc. and Willow Homes." *Id.* (emphasis added).

2000 Belle Chasse Highway has seven separate tenants. As the Government notes in the warrant, a large sign outside the building identifies River Birch and Willow Homes as tenants. Ex. "A" at p. 2. There is one elevator in the building, and it is located at the entrance to the building. A directory is posted on the wall next to the elevator. This directory identifies each of the building's seven tenants: Fred Heebe Investments; Heebe & Heebe, Attorneys; Live Oak Homes; Peter J. Butler, L.L.C.; River Birch, Inc.; Shadowlake Management; and Willow Homes. *See* photographs of directory, elevator, and entrance way, attached as Ex. "B."

The Government was made aware that the building at 2000 Belle Chasse Highway had seven separate tenants. Specifically, FBI Agent Peter Smith, who was also the agent in charge of the search, has been inside the building on several different occasions and presumably would have seen and read the building directory during one of his visits. Additionally, during the

3

course of the pending investigation, the Government received correspondence from Peter J. Butler, L.L.C. This correspondence makes plain that Peter J. Butler, L.L.C. was a distinct business with an office located at 2000 Belle Chasse Highway. *See* Ex. "C."

### B.     *The Knowingly Illegal Search and Seizure*

At approximately 8:00 a.m., approximately 30 armed agents from the Federal Bureau of Investigation ("FBI") and several other federal agencies executed the search warrant. Several agents stood outside the building with blank grand jury subpoenas. When employees arrived for work and attempted to enter the building, the agents asked for the employees' names, wrote the names down on Grand Jury subpoenas, and handed each employee a subpoena compelling testimony before the Grand Jury on October 1, 2010.

Counsel for Petitioner Heebe, William Gibbens and Kyle Schonekas, arrived at the scene soon after the search began. The FBI agents initially refused to allow Petitioner Heebe's counsel to be present; however, the Assistant United States Attorney supervising the search ultimately granted counsel permission to observe the search.

During the course of the search, the Government was put on notice that seven separate businesses maintained offices at 2000 Belle Chasse Highway. The searching agents repeatedly used the elevator throughout the course of the day and must have seen the directory listing these businesses. Additionally, the Government searched through file cabinets and boxes that were clearly and conspicuously labeled with the names of these seven separate companies. Furthermore, Scott Manzella, an IT/computer contractor for several of the searched companies, explicitly advised the searching agents that the different companies had separate computer servers. Ex. "D." The Government's inventory reflects this advice, as the Government labeled

its copies of the servers with Mr. Manzella's information and seized computer data from all of the businesses. Ex. "E."

Despite its knowledge that 2000 Belle Chasse Highway contained seven separate businesses, and the facial limitation on the search warrant, the Government searched all seven businesses and seized documents, computers, and other materials belonging to each of them, including attorney-client privileged documents. Furthermore, during the course of the search, Petitioner Heebe's counsel objected several times regarding the agents' viewing privileged materials and raised this issue with the Assistant United States Attorney who was supervising the search. These objections were not heeded. Though a "clean" team, separate from the general search team, was present for the search, Petitioner Heebe's counsel observed that some obviously privileged documents were read by agents in advance of being provided to the clean team and that other privileged documents were taken without being sent to the clean team at all.

### III. LAW AND ARGUMENT

#### A. *Legal Standards*

Federal Rule of Criminal Procedure 41(g) permits anyone "aggrieved by an unlawful search and seizure of property" to file a motion for the property's return. Fed. R. Crim. P. 41(g). It is well-established in the Fifth Circuit that such motions may be filed even in the absence of a criminal proceeding. *See Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir. 1974) (stating that "a substantial body of precedent establishes that federal district courts have power to order the suppression or return of unlawfully seized property even though no indictment has been returned and thus no criminal prosecution is yet in existence"). In *Richey v. Smith*, 515 F.2d 1239 (5th Cir.1975), the Fifth Circuit identified some of the factors a district court should consider when deciding whether to exercise jurisdiction over a claim for return of property. These factors

include: 1) whether the Government displayed callous disregard for constitutional rights; 2) whether the movant has an individual interest or need in the property; 3) whether the movant would suffer irreparable injury without return of the property; and 4) whether the movant has an adequate remedy at law. *Id.* at 1243-44.

Here, all four of these factors have been met. By using a warrant for one business to search an entire building containing seven businesses, the Government callously disregarded the Petitioners' rights and conducted an illegal general search. Such searches have been "long been abhorred in the jurisprudence of both England and the United States." *United States v. Shugart*, 117 F.3d 838, 845 (5th Cir. 1997); *see also United States v. Beaumont*, 972 F.2d 553, 560 (5th Cir. 1992). Additionally, each of the Petitioners has an individual interest and need for the seized property, particularly the computers and hard drives that are used on a daily basis to conduct the Petitioners' businesses. For example, without the immediate return of its computers, Shadowlake Management, L.L.C. cannot manage its daily operations.

Moreover, Petitioners Heebe and Ward will suffer irreparable injury due to the Government's deliberate and knowing seizure of attorney-client privileged materials that were prepared <u>in response to</u> the Government's current investigation. Like the present case, *Matter of 636 South 66th Terrace, Kansas City, Kan.*, 835 F. Supp. 1304 (D. Kan. 1993), involved the Government's unlawful seizure of attorney-client privileged documents. There, the court found that the Government's seizure of privileged materials caused "irreparable injury" because it would forever destroy the confidentiality of the materials and deny the protection of the attorney-client privilege. *Id.* at 1306

It is no defense for the Government to contend that any illegally seized evidence will not be admitted in any future court proceedings it brings against Petitioners. *Richey*, 515 F.2d at

1244 n.10 (noting such an argument is an "astonishingly callous" one that "ignores the obvious"). Furthermore, at this time, there are no other remedies to the Government's constitutional violations other than a return of property. *E.g., Matter of 636 South 66th Terrace, Kansas City, Kan.*, 835 F. Supp. at 1306 (holding "[i]f the privileged communications materials are permitted to remain in the hands of the government it is apparent to the court that any confidentiality of the communications may well be lost, and the movants will be effectively denied the protection of the privilege"). Accordingly, this Court should order the Government to return all Petitioners' property.

### B. *The Government knowingly violated the scope of the warrant*

The search warrant, on its face, did not authorize the Government's search of any offices other than those of "River Birch Landfill." The River Birch landfill offices are separately maintained from the corporate office of River Birch, Inc. located at 2000 Belle Chasse Highway in Gretna, Louisiana. Nonetheless, even if the Government had authority to search the office of River Birch, Inc., it did not have authority to search the other six businesses in the building. Furthermore, even if the Government were authorized to search those businesses, the materials taken from those companies, as well as from River Birch, Inc., clearly exceed the scope of the items to be seized, as is set forth in Attachment B to the warrant. Ex. "A" at p. 3. Thus, anything taken from the Petitioners' offices must be returned.

1. <u>The Government unlawfully searched businesses not listed in the warrant</u>

In *Maryland v. Garrison*, the Supreme Court stated that the express purpose of the particularity requirement of the Warrant Clause of the Fourth Amendment was to ensure "that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." 480 U.S. 79, 84 (1987).

7

The warrant in *Garrison* identified James McWebb's apartment as the place to be searched, which was described in the warrant as "the premises known as 2036 Park Avenue third floor apartment." 480 U.S. at 80. However, the third floor of 2036 Park Avenue actually had two apartments, Mr. McWebb's and Harold Garrison's. *Id.* Before the police realized they were in Garrison's apartment, they discovered contraband. *Id.*

The Supreme Court found that the search of Garrison's apartment was legal because when the warrant was issued, the police had a "reasonable belief" that Mr. McWebb was the only tenant on the third floor. *Id.* at 86, n. 10. Specifically, the police visited the building before the search, checked with the electric company to confirm that the power bill for the third floor was in Mr. McWebb's name, and checked the address against Mr. McWebb's Baltimore Police Department file. *Id.* Nonetheless the Court also stated that "if the officers had known, <u>or even if they should have known</u>, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's [Garrison's] apartment from the scope of the requested warrant." *Id.* at 85 (emphasis added). The Court further explained that had the officers been aware of their error, they were under an obligation "to <u>discontinue</u> the search" as soon as the error was discovered. *Id.* at 86-87 (emphasis added).

Unlike *Garrison*, when the warrant was issued in the present case, ample evidence shows the Government clearly knew that 2000 Belle Chasse Highway housed other businesses in addition to River Birch, Inc., yet it conducted an unlawful general search by searching every single business in the building. Specifically, the Government's own search warrant indicates it knew that the sign outside the building listed both River Birch, Inc. and Willow, Inc. and the case agent visited the building several times before the search, and must have seen the directory listing the seven different businesses. In fact, the Government received correspondence <u>about</u>

<u>this investigation</u> from Peter Butler on the letterhead of Peter J. Butler, L.L.C.[2] Ex. "C." Thus, the Government cannot argue that it had a good faith, reasonable belief before the search that River Birch, Inc. was the only business in the building.

Additionally, *Garrison* makes plain that government searchers have a duty to discontinue a search as soon as they "were put on notice" that they might be outside the premises specifically set forth in a warrant. *See* 480 U.S. at 87. In the present case, however, the Government's agents breached this duty when they continued to search and seize property despite the numerous indications that the building contained separately identifiable businesses not listed on the face of the search warrant. They ignored the directory listing seven different businesses on the third floor when they entered the building to conduct the search. Ex. "B." They also ignored the clearly marked documents and file cabinets, as well as the information provided by Mr. Manzella regarding the computer server and electronic data information.

Many other courts have held searches like the one conducted here to be unlawful. In the recent case of *United States v. Muse*, the FBI obtained a search warrant for Suite 218 of an office building located at 16250 Northland Drive, Southfield, Michigan. *See* 2010 WL 3064391, 1 (E.D. Mich., Aug. 2, 2010). When the FBI arrived at the building, the agents entered and searched a separate suite, Suite 218A. *Id.* In granting a motion to suppress evidence seized from Suite 218A, the district court held:

> When a single structure houses several discrete units, the terms of the search warrant will prescribe which units within that structure may be searched lawfully. The government does not claim here, nor could it with any credibility, that the warrant authorized the search of all the office suites in 16250 Northland Drive. "For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching

---

[2] In addition, the Department of Justice has a number of special requirements for the search of an attorney's office. *See* United States Attorneys' Manual, § 9-13.420, attached as Ex. "H." It is difficult to imagine that the Government could have complied with these requirements yet failed to realize that Peter J. Butler, L.L.C. was a separate entity.

9

two or more completely separate houses." *United States v. Votteller*, 544 F.2d 1355, 1363 (6th Cir.1976) (quoting *United States v. Hinton*, 219 F.2d 324, 325-26 (7th Cir.1955)); *see also United States v. Gonzalez*, 697 F.2d 155, 156 (6th Cir.1983) (noting that "[i]t is settled that where ... a structure is divided into more than one unit, probable cause must exist for each unit"). The search warrant here was limited to Suite 218; it could not be read reasonably to authorize the search of any other suite of offices in the building.

*Id.* at 5.

Similarly, in *United States v. King*, the FBI obtained a warrant to search "1437 East 116th Street, Cleveland, Cuyahoga County, Ohio, and being more fully described as the downstairs unit in a two-family, two and one half story, white wood-sided dwelling with green trim." 227 F.3d 732, 737 (6th Cir. 2000). When it executed the search, the FBI also searched a basement apartment located in the same building. *Id* at 738. The Sixth Circuit held that the search of the separate apartment was outside the scope of the warrant and therefore unlawful. *Id.* at 753.

In *Kao v. Markel Ins. Co.*, the court held that a warrant for a building did not authorize the search of multiple apartments within that building. 2010 WL 1508210 (E.D. Pa., April 12, 2010). "Under federal law, a warrant issued for a multi-unit structure that does not specify a particular apartment may still be valid when issued, if the police officers who applied for the warrant reasonably believed, after a reasonable investigation, that the premise was in fact a single-unit dwelling." *Id.* at 5. The court in *Kao* held that it was "inconceivable that the police here did not realize upon entering building 2329 that it contained separate apartments. When the police entered, there was commercial property on the first floor, a staircase, a hallway, and separate closed doors to each apartment. The officers' failure to realize the overbreadth of the warrant and cease the search was not objectively reasonable, and the search of each apartment was invalid." *Id.* at 6.

In the present case, the warrant specifically and expressly limited the Government's search to "the offices of River Birch Landfill." However, fully aware that the third floor of 2000 Belle Chasse Highway housed six other businesses, the Government searched the entire third floor. Accordingly, the search of every business at 2000 Belle Chasse Highway was unlawful and all items taken from the six other businesses in the building were unlawfully seized and must be returned immediately.

2. <u>The Government seized property beyond the scope of the warrant</u>

Even if the Government were authorized to search the six additional businesses located at 2000 Belle Chasse Highway, the materials seized from those companies, as well as from River Birch, Inc., clearly exceeds the scope of the items to be seized, as is set forth in Attachment B to the warrant. Ex. "A" at p. 3. But the Government ignored that scope in contravention of constitutional requirements and well-settled Fifth Circuit law.

As the Fifth Circuit has explained,

> A search warrant describing particular items to be seized cannot be used as an admission ticket to a general search of the premises. If this were possible, the particularity requirement of the Fourth Amendment would have little import. A reasonable officer would be aware that there were exceptions to the rule confining the search to items particularly described in the warrant. But we cannot accept under an objective test that any police officer's reasonable understanding of the law would be that any item located anywhere on the premises was fair game, or that a search could continue once items described in the warrant had been seized.

*Creamer v. Porter,* 754 F.2d 1311, 1319 (5th Cir. 1985). In other words, the Government may not take anything that is not described in the warrant, or at least reasonably related to the items described in the warrant.

Yet here, the Government clearly went overboard and seized the following items, none of which are remotely connected to the search parameters in Attachment B to the warrant:

11

(1) Re: RNC General Contractors – check stubs, bank statements w/ copies of cancelled checks, articles of incorporation
(2) option to purchase
(3) miscellaneous business records from Petitioner Heebe's office
(4) "Dutchie" Folder of business records
(5) Phone log
(6) POC printouts
(7) Sprint invoices
(8) Environmental Services, Inc. invoices
(9) Financial statements re: payments to contractors
(10) memo re: continued employment
(11) printed out emails
(12) zoning documents
(13) Page of handwritten notes
(14) Insurance documents

See Ex. "G."

In addition, the following items are missing from the Petitioners' various offices:

(1) Mr. Butler's personal information (social security number, DOB, home address, home fax, credit card numbers, etc.) and the information to access his bank accounts and investment accounts;
(2) Several files related to Plaquemines Parish;
(3) Mr. Butler's file related to the West Jefferson Medical Center Board of Directors
(4) Mr. Butler's file entitled GNOL Property
(5) A binder containing City of New Orleans Contracts and Metro Contract
(6) Monthly financial statements, cash balances, occupancy reports, and cash flow statements for Shadowlake Management, L.L.C.'s apartment complexes.

It is hard to imagine how any of these items fit into any description of the Items to be Searched and Seized as set forth in the search warrant. Equally disconcerting is that <u>none</u> of these items are listed in the Government's search receipts.

The Government also seized all computers and computer storage devices, regardless of where it found them, and without having any idea of what those devices contained. The Government's search receipt lists the following unexplained items:

(1) Electronic storage media e.g. CD's, DVD's, Hard drive
(2) Computer discs (floppy – eleven)
(3) Quick books software
(4) Backup tapes for servers for Shadowlake and River Birch

12

  (5)  audiotapes
  (6)  2 Dell laptops with power adapter
  (7)  Hard drive labeled Heebe
  (8)  Hard drive labeled Fantom
  (9)  ten server back up tapes
  (10)  Desktop PC Dell Vostro 220s
  (11)  Rosewill external hard drive
  (12)  Damaris Winters' PC hard drive
  (13)  Adrea Heebe's PC hard drive
  (14)  Reception area PC hard drive
  (15)  Mike Drawe's PC hard drive
  (16)  Dominick Russo's PC hard drive

*See* Ex. "G." The Government cannot have any reason to believe that any of these materials contain evidence within the scope of the warrant – the Government just seized them without any idea what they were. In fact, the evidence indicates that the Government indiscriminately seized every computer and computer storage device in the building.

  Furthermore, one search receipt incorrectly states that the Government took "eleven FBI hard drives containing evidence captured from River Birch servers, computers, and loose media." *Id.* The Government knows that this is incorrect, and that it seized evidence captured from servers belonging to River Birch, Inc.; Willow, Inc.; and Shadowlake Management, L.L.C. There are six separate computer servers in 2000 Belle Chasse Highway. Four of these servers contain data belonging to Shadowlake Management, L.L.C., and two of these servers contain data belonging to both Willow, Inc. and River Birch, Inc. Scott Manzella explained this to the Government. Ex. "D." The Government labeled the hard drives containing data from the servers with Mr. Manzella's information. Ex. "E." Despite knowing this, the Government seized copies of two of Shadowlake's servers and both of Willow/River Birch's servers. Moreover, the Government failed to disclose this fact on the search warrant receipts.

  By indiscriminately seizing virtually anything that came across its path, the Government trampled the Petitioners' constitutional rights and executed an illegal and forbidden general

warrant. *See United States v. Shugart*, 117 F.3d 838, 845 (5th Cir. 1997); *see also United States v. Beaumont*, 972 F.2d 553, 560 (5th Cir. 1992). The Government should return everything it took during its unlawful search.

### C. The Government improperly searched attorney-client privileged materials

In addition to searching numerous businesses without authorization and indiscriminately seizing property beyond the scope of the warrant, the Government knowingly searched and seized attorney-client privileged documents from these businesses. Near the beginning of the search, Petitioner Heebe's counsel complained to the Assistant United States Attorney supervising the search that the agents were reviewing privileged documents. In response, counsel was advised that a clean team, separate from the general search team, was conducting the search of the offices of Peter J. Butler, L.L.C. But there were plainly attorney-client privileged documents located throughout the other offices as well, and Petitioner Heebe's counsel observed that, notwithstanding their complaints, the general search team was reviewing attorney-client privileged materials found in those other locations. Although the Government advised Petitioner Heebe's counsel that the general search Agents had been instructed to set aside any potentially privileged materials and send them to the clean team, counsel observed this procedure was not being followed.

In fact, the Government's own search receipts indicate that even if the Government had placed a valid clean-team procedure in place, no protective measures were actually followed. The only items listed on the clean-team's receipt were taken from Peter J. Butler's offices, and the clean team left the building several hours before the general search was concluded. Ex. "F." Everything else, including attorney-client privileged documents, was taken by the general search

team. Ex. "G." Accordingly, any attorney-client materials illegally taken during the general search are still in possession of the general search team and must be returned.

Moreover, because the Government's search receipts are woefully inadequate, the extent of the privilege violations will be unknown until the Petitioners are allowed to view everything that was taken. The Petitioners know, however, that the Government has seized numerous attorney-client privileged documents. Of utmost concern is the Government's seizure of a number of files prepared <u>in response to</u> the Government's investigation: Peter Butler's files entitled "Jefferson Parish RFP," "Derrick Shepherd," "Tim Coulon and Tim Whitmer," and "Investigation." In addition, the Government seized Mr. Butler's file on the Louisiana Ethics Board investigation into River Birch, Inc.'s purchase of insurance through Tim Coulon, a matter which the Government itself is investigating. All of these obviously attorney-client privileged materials should be returned. *See, e.g., Matter of 636 South 66th Terrace, Kansas City, Kan.*, 835 F. Supp. at 1306 (ordering return of "all property seized" when the seizure in question involved attorney-client privileged materials and "grossly exceeded the search warrant").

## CONCLUSION

For the foregoing reasons, the Petitioners' request that the Court order the Government to return all property unlawfully seized from 2000 Belle Chasse Highway.

Respectfully submitted,

_/s/ WMP/AW/_  
Kyle D. Schonekas, 1187  
William P. Gibbens, 27225  
SCHONEKAS, EVANS, MCGOEY  
& MCEACHIN, L.L.C.  
Poydras Center  
650 Poydras Street, Suite 2150  
New Orleans, Louisiana  70130  
Telephone:  (504) 680-6050  
kyle@semmlaw.com  
billy@semmlaw.com  

Attorneys for Frederick R. Heebe, Shadowlake Management, L.L.C., Fred Heebe Investments, and Live Oak Homes Corporation

_Michael S. Walsh by WMP/AW/_  
Michael S. Walsh, 8500  
LEE & WALSH  
257 Maximilian Street  
Baton Rouge, LA  70802  
Telephone:  (225) 344-0474  
Michael@leeandwalsh.com  

Attorney for Willow, Inc. and Heebe & Heebe, P.L.C.

_Bob Habans by WMP/AW/_  
Bob Habans  
HABANS & CARRIERE  
10843 N. Oak Hills Parkway  
Baton Rouge, Louisiana  70810  
Telephone:  (225) 757-0225  
bobhab@bellsouth.net  

Attorney for A.J. Ward, Jr

_/s/ Edward J. Castaing_  
Edward J. Castaing  
CRULL, CASTAING & LILLY  
601 Poydras Street, Suite 2320  
New Orleans, Louisiana  70130  
Telephone:  (504) 581-7700  
ecastaing@cclhlaw.com  

Attorney for River Birch, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2010 I served a copy of the foregoing memorandum by hand upon Assistant United States Attorney Greg Kennedy.

_____
WILLIAM P. GIBBENS