UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH | * | CIVIL ACTION NO: 10-3452 |
| OF 2000 BELLE CHASSE HIGHWAY | | |
| GRETNA , LOUISIANA | * | SECTION  "C" (5) |
| | * | |

\* \* \*

**GOVERNMENT'S OPPOSITION TO RETURN OF SEIZED
PROPERTY AND INCORPORATED MEMORANDUM**

NOW INTO COURT, comes the United States of America, appearing herein through the undersigned Assistant United States Attorney, responds in opposition to Petitioners' motion for return of seized property.

On September 23, 2010, agents from the Federal Bureau of Investigation (FBI) and Internal Revenue Service (IRS) executed a lawfully obtained search warrant for the premises located at 2000 Belle Chasse Highway, Gretna, Louisiana.  The search warrant was signed by United States Magistrate Judge Louis Moore, Jr. on September 22, 2010.  According to the attached affidavit by Special Agent Malcolm Bezet of the FBI, agents entered the building through a common entrance and then proceeded to the third floor.  *Ex A*.  The third floor is the only occupied space in the building.  *Id*.  The agents then entered the office space through a common reception area.  *Id.*, *Ex. B*. The door to the entrance to the common reception area is not

marked with any business names. *Id*. Once inside the reception area, agents then entered a common office space occupied by cubicles, offices and other rooms typically found in corporate offices. *Id., Ex C*. None of the individual cubicles, offices or other rooms were labeled or contained name plates indicating that they were occupied by individuals or employees of any particular business or corporation. *Exs. C,D,E* . A common computer room containing several computer servers and other computer equipment was located within office space on the third floor. *Exs. F, G*. The computer room did not contain any markings indicating it was particular to any given corporation or business.[1]  *Id.*

       The agents conducted a thorough search of the office space contained in the premises of 2200 Belle Chasse Hwy. Attachment "B" of the Search Warrant contained numerous items that the agents expected to find in the search. *Ex. H*. The agents searched the office space and removed items in accordance with the warrant.

    A.    **The search was executed lawfully and consistent with the terms within the limits of the warrant**.

       The agents were authorized to search the building located at 2000 Belle Chasse Highway, Gretna, which contains the corporate offices of River Birch Landfill (RBL). The agents did not exceed the scope of the warrant during their search. The only occupied space in the building is on the third floor. If any other business were located within the office space of the third floor, they were permissibly searched because they shared common office space, common employees and common resources with RBL.

---

[1] The servers were later marked for identification by the searching agents

The agents searched the building as described in the warrant. The existence of more than one business, when there is no distinguishing or identifying marks, does not invalidate the search of the premises. *United States v. Prout*, 526 F. 2d 380 (5th Cir. 1976). In *Prout*, defendant Prout argued that the evidence seized from his apartment should have been suppressed because the search warranted named the premises to be searched only as "Quick Sales Real Estate Office, 1001 Nunez St., New Orleans, LA." *Id*. at 386. Prout argued this description only authorized a search of the realty office and not the apartment upstairs, where the drugs were found. *Id*. The court observed, however, that there was easy interior access between the office and the apartment and that there was not any identification to notate the separate premises inside the structure. *Id*. at 387. According to the Fifth Circuit: "[W]e hold that the description of the premises to be searched was sufficient to validate the search of the apartment. The warrant authorized search of 'the premises known as Quick Sales Real Estate Office, 1001 Nunez Street.' The Nunez Street entrance gave access to both the realty office and the apartment. Neither the exterior entrance to the building nor the interior doors to the apartment and office bore any municipal numbers or identifying marks to indicate the existence of two separate premises, so the executing officers could reasonably search the apartment as part of the premises described." *Id*. at 388.

Similarly and in the instant case, because there was no delineation of any separate business contained within the building, the agents could search the entirety of the premises as described. The building at 2000 Belle Chasse Hwy. had no separate identifying marks other than a small directory on the interior wall at the downstairs entrance. Petitioner's Exhibit "A" However, as shown in the Petitioner's photograph, the listed entities do not have separate addresses within the building, all of the entities are listed as occupying the third floor. *Id*.

3

Importantly, the third floor was the only occupied area of the building and was the only area searched by federal agents.

The test for whether a sufficient description of the premises to be searched is given in a search warrant was stated in *Steele v. United States*, 267 U.S. 498 (1925). According to the Supreme Court, "It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Id*. at 503. In *Steele*, the Court upheld the search of 609 West 46th street under a warrant describing the premises as 611 West 46th Street, where the building was a large warehouse having both numbers and being only partly partitioned. *Id*.

In this case, there was only one municipal address, with no individual office or suite numbers, even though there may have been several businesses located inside of the building. The building as described in the warrant was the premises searched. There were no separate partitions or identifying marks that would have alerted the agents that they were going beyond the scope of the warrant. The premises searched was one office space, not individual offices for individual businesses.

Because the purported other businesses shared common space, employees and resources, the search did not exceed the scope of the warrant. In *United States v. Edwards*, defendants challenged the issuance of the warrant, and subsequent searches, of their offices at 4621 Jamestown Avenue because the warrant lacked particularity as it merely specified "the office located at 4621 Jamestown Avenue." 124 F. Supp. 2d 387, 427 (M.D. La. 2000). In *Edwards*, the office building actually housed six separate offices, even though the tenants shared a common entrance. The Fifth Circuit held, however, that the warrant authorized the search of four specific

4

law offices in the building and was not overbroad. *Id*. In addition, according to the Fifth Circuit, "it was reasonable that the search of those offices would encompass a search of the common areas in the building to which all occupants at 4621 Jamestown Avenue had access, including the kitchen and library/conference room. " *Id*.

In the present case, the warrant authorizes the search of 2000 Belle, Chasse Hwy., the offices of RBL. The agents should not be prohibited from searching within the confines of the warrant merely because there is a directory on the wall to a common entrance downstairs which lists the possibility of other businesses within the premises. The agents went upstairs to a common reception entrance and then found no evidence that would have independently alerted them that there were other possible businesses contained within RBL's offices. *Ex. B* . In *United States v. Stefonek*, the defendant had sought a motion to suppress evidence seized from Suite 104, arguing that it exceeded the scope of the warrant. 179 F.3d 1030, 1032 (7th Cir. 1999). The Seventh Circuit upheld the seizure of items from Suite 104, even though the warrant gave federal agents permission to search only suites 101, 102, and 103. *Id*. The court held that the search of Suite 104 was permissible under the Fourth Amendment, however, because the door to Suite 104 was marked "Suite 101," and the division of the interior into separately numbered suites was obscure. *Id*. Here, as in *Stefonek*, there were no separate markers on the doors that would have indicated any separate business.

The agents acted in good faith and within the warrant. Merely because employees of RBL stated to the agents that other businesses were located there or that certain computer servers pertained to other businesses, should not curtail the agents right to search those areas and servers. To allow an employee of the business being searched to dictate what can and cannot be searched

would thwart the search itself and would effectively enable a business to hide documents and other evidence merely by telling the agent that the area or item being searched belonged to another business. This is a determination that the agent must make after a careful evaluation of the items seized, without relying on what was told to him by an employee of the business. Because all records were kept in common file cabinets, computer servers and office areas, the agents had a right to search any item within the office space that may contain items sought in the warrant. This is what the agents did in this case.

### B. The items seized were within the cope of the warrant

Attachment B of the warrant listed numerous items to be searched and seized:

1. Any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (such as, JPG, GIF, TIF, AVI, and MPG and other image files), and any electronic data storage devices including, but not limited to hard ware, software, diskettes, back up tapes, CD-ROMS, DVD, flash memory devices and other storage media; any input/output peripheral devices, such as passwords, data security devices, and related documentation, and any hardware/software manuals.

2. Any and all documents, correspondence, letters, notes, memorandums, printouts, records, contracts, communications, writings, billing records, payments, expenditures, agreements, calendars, message books, emails, facsimiles, and electronic communications as they relate to Henry Mouton, Derrick Shepherd, Jody Amedee, Timothy Whitmer, Aaron Broussard, Gentilly landfill, John Ward Vandervort, Christopher W. Vandervort, Julie A. Vandervort, Dominic A. Fazzio, Rebecca T. Fazzio, Tom Wilkinson, Water Front Properties, LLC, Ring Associates, LLC, B & C Contractors, LLC, Dangle & Associates, LLC, Anne's Properties, LLC, and Big Bang Properties, LLC.

3. Any and all documents, correspondence, letters, notes, memorandums, printouts, records, contracts, communications, writings, billing records, payments, expenditures, agreements, calendars, message books, emails, facsimiles, and electronic communications as they relate to the Request for Proposals issued by Jefferson Parish, Louisiana, #RFP-0176, Responses to the Request for Proposals, bids, and contracts, and any other business dealings between RBL and Jefferson Parish.

4. Any and all documents, correspondence, letters, notes, memorandums, printouts, records, contracts, communications, writings, billing records, payments, expenditures, agreements, calendars, message books, emails, facsimiles, and electronic communications as they relate to any legislation, or proposed legislation concerning the Gentilly Landfill.

5. Any and all documents, correspondence, letters, notes, memorandums, printouts, records, contracts, communications, writings, billing records, agreements, calendars, message books, emails, facsimiles, and electronic communications as they relate to donations, contributions, campaign contributions, payments, expenditures, loans, gifts to, for, or on behalf of public officials, either directly, indirectly, or through third party conduits.

*Ex. H.*

The agents are allowed to seize items that are properly related to the warrant. " [t]he Court notes that those documents having a sufficient nexus to the crimes being investigated may be seized at the time agents are properly executing a warrant authorizing a search for particular items." *Creamer v. Porter,* 754 F. 2d 311, 1318 (5th Cir. 1985). The items seized by the agents in the present case were within the scope of the attachment. The items listed by the petitioner in his memorandum that were seized by agents in the search are business records that were documents sought in the search and related to the crimes being investigated. For example, the petitioner lists "(1) Re: RNC General contractors - check stubs, bank statements w/ copies of cancelled checks, articles of incorporation." Petitioners Memorandum, p. 12. Paragraphs 2, 3 and 4 of Exhibit B of the search warrant all allow for seizure of documents, records, billing

record, payments, expenditures, agreements, etc. as they pertain to certain persons or entities. *Id.* These documents, along with all of the other items listed by the petitioner, were therefore permissibly seized because they were documents or records sought within the warrant or were related to the crimes being investigated.

Arguably, even if the items seized were not particularly described in the warrant, they were still legally seized because they were items of an "incriminating character" or had a sufficient nexus to the crime being investigated. "Although as a general rule only items described in a search warrant may be seized, there are two relevant exceptions to this rule. First, items of "incriminatory character" found in the course of a legal search but that were not described in the search warrant may properly be seized.  Second, property that has a sufficient nexus to the crime being investigated may be seized at the time officers are properly executing a warrant authorizing a search for other items." *Garland v. Maggio*, 717 F. 2d 199, 206 (5th Cir. 1983) ; *United States v. Kane*, 450 F. 2d 77 (5th Cir. 1971), *cert denied*, 405 U.S. 934 (1972).

      **C.**      **The agents did not violate the attorney client privilege**

The agents who conducted the search were mindful of items that may contain attorney-client privilege. *Ex. A.*  Special Agent Bezet and other agents made every lawful effort to separate what was believed to be attorney-client privileged material for a late inspection by a taint team.  As noted in Petitioner's Memorandum, a "clean team" was on scene to collect items from Peter Butler, Sr.'s office at 2000 Belle Chasse Hwy.  Petitioner's Memorandum, p. 14.

Again, agents cannot be expected to take the word of employees or lawyers for the very entity being searched that documents contain privileged material and therefore could not be seized. Agents on the scene must be allowed to make a cursory inspection of documents to make

8

an initial determination if the item is privileged. Agents should not rely on the word of the attorney for the entity who was on scene to tell the agents what is privileged information. This must be determined during the course of the investigation after comparing the documents to the relevant facts of the investigation. Correspondence or other documents between persons and lawyers does not automatically make the contents of the correspondence or document privileged.

Additionally, the petitioner alleges that the documents are privileged but offers no accompanying information to support that position. "Vague allegations by attorney that documents seized from his offices contained privileged material, with no substantiating proof and no indication of number of privileged documents that were seized, were insufficient to establish "irreparable harm," of kind required to permit district court to entertain, on equitable grounds, in advance of indictment's being filed..." *United States v. Search of Law Office, Residence, and Storage Unit Alan Brown*, 331 F. 3d 404 (5th Cir. 2003).

Before any documents are returned to the petitioner, the government is allowed to review the documents to make its own determination as to whether the documents contain privileged material. In a case very similar to the case at bar, *In re Search of 5444 Westheimer Road Suite 1570, Houston, Texas, on May 4, 2006*, a United States Magistrate Judge in the Southern District of Texas, after reviewing the special agent's thirty-nine page affidavit, which was under seal, signed the search warrant. The warrant authorized seizure of numerous categories of evidence and further authorized imaging of computers. 2006 WL 18881370, (S.D. Tex. 2006) (Not Reported). On May 4, 2006, the FBI executed the search warrant, seized 118 boxes of materials, and imaged the hard drives of four computers. *Id*. The movant requested that documents seized be returned because they were subject to attorney-client privilege. *Id*. The district court found

that the government was entitled to review the items seized according to its taint team policy and that there were sufficient procedures in effect that would allow the petitioner to address in court the use of documents by the government that the petitioner believed were privileged. *Id* at 3.  The district court went on to rule that the petitioner had failed to show callous disregard in its execution of the search warrant.  *Id*.  Here, the government correctly executed the search warrant and has adequate safeguards in place that would prevent disclosure of items that are truly privileged to the prosecution team.

        D.       **The petitioner is not entitled to return of the items seized at this time**

In *Richey v. Smith*, the Fifth Circuit named several factors that may be considered when a court is making a decision as to whether to exercise its equitable jurisdiction.  515 F. 2d 1239 (5th Cir. 1975).  The district court must look to whether: (1) the government displayed a callous disregard for the constitutional rights of the movant; (2) the movant has an individual interest in and need for the property he wants returned; (3) the movant would be irreparably injured by denying return of the property; and, (4) the movant has an adequate remedy at law for the redress of his grievance.  *Id.* at 1243-1244.

In this case, the agents searched within the limits of the warrant.  The agents were authorized to search 2000 Belle Chasse Hwy., which is the premises searched.  The agents did not act in callous disregard for the constitutional rights of any person.   As shown in Agent Bezet's affidavit, the agents did their utmost to search within the confines of the warrant.  *Ex. A* .

The movant has not been nor will be irreparably harmed.  Once a determination is made that any item or document seized is subject to a privilege, or is not relevant to the investigation, it will be returned.  The government has no need nor any desire to unnecessarily retain items in its investigation.

Finally, the petitioner has adequate remedy at law for the redress of his grievance.  Should an indictment be returned in this case, any defendant will be entitled to review all items or documents that the government would intend to introduce at trial pursuant to Rule 16 of the Federal Rules of Criminal Procedure. As this court is well aware, a defendant can petition the district court to exclude any evidence that either is not relevant or was obtained contrary to law.

### Conclusion

For the above reasons, the Petitioner's motion to return property should be **DENIED**.

    Respectfully submitted,

    JIM LETTEN
    UNITED STATES ATTORNEY


    s/Gregory M. Kennedy
    GREGORY M. KENNEDY
    Assistant United States Attorney
    Hale Boggs Federal Building
    500 Poydras Street, Second Floor
    New Orleans, Louisiana  70130
    Telephone:  (504) 680-3102
    Email:  Greg.Kennedy@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.  Additionally, a copy of the foregoing was provided to William Gibbens, Esq. on November 17, 2010.

                                                                s/Gregory M. Kennedy
                                                                GREGORY M. KENNEDY
                                                                Assistant United States Attorney