UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HEEBE ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-3452** |
| **UNITED STATES OF AMERICA** | **SECTION: "C" (5)** |

## ORDER AND REASONS

Before the Court is a motion for the return of property seized, filed by petitioners, Frederick R. Heebe, A.J. Ward, Shadowlake Managment, L.L.C., Willow, Inc., Fred Heebe Investments, Live Oak Homes Corporation, Heebe & Heebe, P.L.C., and River Birch, Inc., who, pursuant to Federal Rule of Criminal Procedure 41(g), move for the return of property seized by the Government in a search of their businesses on September 23, 2010. Rec. Doc. 3. For the following reasons, Petitioners' Motion is GRANTED.

## BACKGROUND

On September 22, 2010, United States Magistrate Judge Louis Moore, Jr. Signed a search warrant for the "offices of River Birch Landfill... located at 2000 Belle Chasse Highway, Gretna, Louisiana, 70056." Rec. Doc. 3-3, Att. A. Members of the Federal Bureau of Investigation executed the warrant at 8:00 a.m. the next day seizing documents, computers, and materials belonging to each of the seven businesses on the third floor of the building described in the search

warrant.

Petitioners argue that the Government did not have authority to search six of the seven businesses from which property was seized, that it knowingly seized items outside of the scope of the warrant, and that it impermissibly reviewed attorney-client privileged documents. As a result, Petitioners request that this Court order the Government to return all property unlawfully seized from 2000 Belle Chasse Highway. Rec. Doc. 3-1.

In its Opposition to Petitioners' Motion, the Government alleges that the search was lawful and consistent with the terms of the warrant, that all items seized were within the scope of the warrant, and that its agents in no way violated an attorney-client privilege. Thus, the Government argues that petitioners are not entitled to the return of items seized during the search.

## **ANALYSIS**

I) JURISDICTION

As noted by the United States Court of Appeals for the Fifth Circuit, "a substantial body of precedent establishes that federal district courts have power to order suppression or return of unlawfully seized property even though no indictment has been returned and thus no criminal prosecution is yet in existence." *Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir. 1974). "The theory articulated by most of the cases is that jurisdiction to order suppression or return prior to indictment exists not by virtue of any statute but rather derives from the inherent authority of the court over those who are its officers." *Id*. The Fifth Circuit explained further:

> "As the Court of Appeals for the District of Columbia Circuit has observed, Rule 41 'is a crystallization of a principle of equity jurisdiction. That equity jurisdiction persists as to situations not specifically covered by the Rule. Alternatively the same result can be reached by a broad reading of the Rule.'"

*Id.*, citing *Smith v. Katzenbach*, 351 F.2d 810, 814 (1965).

One year after the *Hunsucker* decision, Fifth Circuit once again analyzed the application of this "general equitable jurisdiction of the federal courts." *Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975). In *Richey*, the Fifth Circuit enumerated the four discretionary factors considered in the *Hunsucker* case for determining whether to exercise this "anamolous jurisdiction." *Id.* "First, and perhaps foremost is the question whether the motion for return of property accurately alleges that government agents... displayed a 'callous disregard for the constitutional rights of [petitioner].'" The court should also consider "whether the plaintiff has an individual interest in and need for the material whose return he seeks; whether the plaintiff would be irreparably injured by denial of the return of property; and whether the plaintiff has an adequate remedy at law for the redress of his grievance." *Id.* at 1243-44.

II) ELEMENTS

    a. *Callous disregard for constitutional rights*

Petitioners allege that "all four factors have been met." Rec. Doc. 3-1 at 6. First, they refer to the Government's use of "a warrant for one business to search an entire building containing seven businesses" as a "callous disregard for constitutional rights" sufficient to satisfy the first element. *Id.* In its Opposition, the Government argues that the search was completely within the scope of the warrant and, therefore, did not violate any constitutional rights. Rec. Doc. 14 at 10. In support of this assertion, the Government offers the affidavit of Agent Bezet which describes the search conducted. Rec. Doc. 14-1, Gov. Exh. A. In his affidavit, Agent Bezet recounts a lack of "any indicators that would have differentiated any offices from any other businesses that may or may not

have been conducted therein." *Id*.

The warrant, pursuant to which the FBI searched 2000 Belle Chasse Highway, suffers from similar deficiencies as the search warrant issued in *Maryland v. Garrison*. 480 U.S. 79 (1987). In both cases, the warrant appeared to intend the search of a single residence/business but vaguely referred to a location housing other, unintended residents/businesses. *Garrison*, like the case at bar, hinged on the constitutionality of the *execution* of an excessively broad warrant instead of its issuance or facial validity. *Id*. As the Supreme Court made clear in *Garrison*,

> "[i]f the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus, had been aware of the error in the warrant, they would have been obligated to limit their search to McWebb's apartment. Moreover, as the officers recognized, they were required to discontinue the search of [Garrison's] apartment as soon as they discovered that their were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant. *The officers' conduct and the limits of the search were based on the information available as the search proceeded*.

*Id*. at 87-88. (Emphasis added)

The Supreme Court held the search in *Garrison* to be objectively reasonable for two reasons. First, the officer obtaining the warrant "reasonably concluded that there was only one apartment on the third floor" after verifying information from an informant, examining the exterior of the building, and making an inquiry with the utility company. *Id*. at 81. Second, the Supreme Court held the execution of the warrant to be reasonable because of the way the officers responded upon receiving notice that two separate apartments existed on the third floor of 2036 Park Avenue. "As soon as they became aware of [the presence of distinct tenants, not described in the warrant], the search was discontinued... No further search of [Garrison's] apartment was made." *Id.*

The search of 2000 Belle Chasse Highway potentially began under a similar reasonable

belief that the warrant accurately described the only business within the building at that address. However, unlike the reaction of the officers in *Garrison*, the officers here failed to discontinue or limit their search after receiving notice of the warrant's overbreadth. "They ignored the directory listing seven different businesses on the third floor when they entered the building to conduct the search." Rec. Doc. 3-1, 9; *referencing* Rec. Doc. 3-3, Pet. Exh. B. "They also ignored the clearly marked documents and file cabinets, as well as the information provided by Mr. Manzella regarding the computer server and electronic data information." *Id*. Mr. Manzella's affidavit describes the distinct nature of the computer servers, two of which relate to River Birch and four that do not. Rec. Doc. 3-3, Exh. D. Also, Petitioner Heebe's counsel appeared soon after the search began to alert the supervising Assistant United States Attorney to the presence of privileged documents. Rec. Doc. 3-1, 14.

Despite the third floor directory, discussions with Mr. Manzella and Petitioner Heebe's counsel, and labels indicating separate and distinct businesses on the same floor, the Government failed to limit its search in any way and seized numerous documents and other property from parties not described in the warrant. The evidence discovered before completing the search of 2000 Belle Chasse Highway, indicating potential defects in the warrant, was sufficient to put the supervising AUSA on notice that a general search of the entire third floor could be unconstitutionally excessive. A search conducted in such a way is objectively unreasonable and displays a "callous disregard" for privacy rights protected by the Fourth Amendment.

    b. *Movant's individual interest in or need for property sought*

Regarding the second factor considered in determining whether to exercise equitable

5

jurisdiction, Petitioners claim an "individual interest" in the seized property, particularly in computers and hard drives essential to conducting daily business. Rec. Doc. 3-1 at 6. The United States District Court for the Southern District of Texas addressed a similar issue in 2006. *In the Matter of the Search of 5444 Westheimer Road Suite 1570, Houston, Texas, On May 4, 2006*, 2006 WL 1881370 (S.D. Tex.). There, the warrant also "authorized seizure of numerous categories of evidence and further authorized imaging of computers." *Id*. at 1. As that court found, "[w]ith respect to the second factor, the Government does not contest that ERHC has a need or interest in the documents sought." *Id*. Because the Government failed to argue that Petitioners lack an "individual interest" in the property seized, the Court finds the second element satisfied.

    c. *Irreparable injury without the return of the property*

For the third element of this analysis, Petitioners Heebe and Ward claim an "irreparable injury" in the form of "the Government's knowing seizure of attorney-client privileged materials that were prepared <u>in response to</u> the Government's current investigation." Rec. Doc. 3-1 at 6. In support, they cite a case decided by the United States District Court for the District of Kansas. *In the Matter of the Search of 636 South 66th Terrace, Kansas City, Kansas*, 835 F.Supp. 1304 (D. Kan. 1993). In that case, as here, movants claimed an "irreparable injury" by way of the Government's seizure of attorney-client privileged documents. There, District Judge Van Bebber concluded that "an invasion of the attorney-client privilege through a search and seizure generates an irreparable injury to the possessor of the privilege–in this case the movants." *Id.* at 1306. He went on to explain more completely:

> "The basis of the attorney-client privilege is to protect confidential communications between client and attorney. If the privileged communications materials are

> permitted to remain in the hands of the government it is apparent to the court that any confidentiality of the communications involved may be lost, and the movants will effectively be denied the protection of the privilege. Once lost, confidentiality cannot be restored. Movants have no other remedy, and their injury is irreparable. Thus the court concludes that the exercise of equitable jurisdiction is justified in this case."

*Id.* at 1306.

In Opposition, the Government insists that "[t]he movant has not been nor will be irreparably harmed. Once a determination is made that any item or document seized is subject to a privilege, or is not relevant to the investigation, it will be returned." Rec. Doc. 14 at 10. The Government claims to have "no need nor any desire to unnecessarily retain items in its investigation." *Id*. However, as Petitioners note in their reply, "the Government has been able to review [Petitioners'] computer for 60 days and still has not returned it." Rec. Doc. 18 at 12.

The Government seeks an unimpeded investigation, and Petitioners seek a return of property that would enable continuance of daily business operations. By copying all seized, unprivileged documents and data, and returning originals, the Government can resume its investigation while mitigating further irreparable injury to Petitioners.

d. *Adequate Remedy at Law*

The Government insists that, "should an indictment be returned in this case, any defendant will be entitled to review all items or documents that the government would intend to introduce at trial pursuant to Rule 16 of the Federal Rules of criminal procedure." Government's Opposition, 11. In reply to the Government's Opposition, Petitioners assert that "there is no other remedy available to Petitioners." Petitioners' Reply Memorandum, 12.

The Government's proposed remedy exists only after the filing of an indictment. This might

be an adequate remedy if the Petitioners were already defendants and sought suppression of evidence instead of return of property. The only "adequate remedy" here would either be the return of seized property or at least of copies of seized data sufficient to resume Petitioners' daily business operations. The Government has returned neither and suggested no other adequate remedy justifying a denial of Petitioners' Motion.

## **CONCLUSION**

Accordingly,

IT IS ORDERED that Petitioners' motion for return of property is GRANTED.

IT IS FURTHER ORDERED that the Government immediately return all seized property of tenants other than River Birch, Inc. In the case of property shared between River Birch, Inc. and other tenants, the Government shall provide to petitioners copies of all documents it intends to retain by Monday, December 27, 2010. Likewise, the Government shall complete its "clean team" review and return all privileged documents to the petitioners by Monday, December 27, 2010.

New Orleans, Louisiana, this 20th day of December, 2010.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**