UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**FREDERICK R. HEEBE, ET AL**                               **CIVIL ACTION**

**VERSUS**                                                                  **NO. 10-3452**

**UNITED STATES OF AMERICA**                        **SECTION: "C" (5)**

ORDER AND REASONS

Before the Court is Defendant's Motion for Rule 41(g) Evidentiary Hearing in Reconsideration of Order to Return Seized Documents. (Rec. Doc. 31). Plaintiffs oppose the motion. (Rec. Doc. 42). Also before the Court is Plaintiffs' Motion to Enforce Judgement. (Rec. Doc. 36). Defendant opposes the motion. (Rec. Doc. 41). On February 24, 2011 the Court held an evidentiary hearing on both motions. Having considered the evidence and testimony presented at the evidentiary hearing, the record, the memoranda of counsel, and applicable law, the motion for reconsideration is DENIED and the motion to enforce judgment is DENIED for the following reasons.

**I. BACKGROUND**

This case arises from the September 23, 2010 search of 2000 Belle Chasse Highway. That search was conducted pursuant to a search warrant for the "offices of River Birch Landfill... located at 2000 Belle Chasse Highway, Gretna, Louisiana, 70056." (Rec. Doc. 3-3). Members of the Federal Bureau of Investigation ("FBI") executed the warrant and seized documents, computers, and materials from almost every office on the third floor of 2000 Belle Chasse Highway, and many of the offices turned out to belong to various businesses not described in the warrant, including those now Plaintiffs in this case. On October 13, 2010, Plaintiffs filed a motion for return of property

1

under Federal Rule of Criminal Procedure 41(g), arguing that the Government did not have authority to search six of the seven businesses from which property was seized, that it knowingly seized items outside the scope of the warrant, and that it impermissibly reviewed attorney-client privileged documents. (Rec. Doc. 3). The Government maintained that the search was lawful, that all items seized were within the scope of the warrant, and that its agents in no way violated an attorney-client privilege. This Court granted Plaintiff's motion and ordered:

> "the Government [to] immediately return all seized property of tenants other than River Birch, Inc. In the case of property shared between River Birch, Inc. and other tenants, the Government shall provide to petitioners copies of all documents it intends to retain by Monday, December 27, 2010. Likewise, the Government shall complete its 'clean team' review and return all privileged documents to the petitioners by Monday, December 27, 2010." (Rec. Doc. 22 at 8).

Defendants now argue that when this Court issued the above order it had a mistaken understanding of the facts underlying the search of 2000 Belle Chasse Highway. (Rec. Doc. 31-1 at 1). Plaintiffs argue that this Court was not mistaken in issuing its prior order. (Rec. Doc. 42). Plaintiffs further argue that the Government should be found in contempt for failing to comply with this Court's order. First, Plaintiffs argue that the Government has failed to return property that clearly belongs to tenants other than River Birch, Inc. (Rec. Doc. 36 at 2). Second, Plaintiffs maintain that the Government has retained copies of all the non-River Birch property that it has returned. *Id.* Third, they claim that the Government has not returned all privileged documents as ordered. *Id.*

On February 24, 2011 the Court held an evidentiary hearing on both motions. At that hearing the Court heard testimony from Malcolm Bezet, Peter Smith, Scott Downie, and Michael Zummer all from the FBI. The Court also heard testimony from Plaintiffs' counsel, Kyle Schonekas, and Assistant U.S. Attorney James Mann. (Rec. Doc. 62 at 2). At the hearing the Government

indicated that it had no objection to providing Plaintiffs with copies of everything taken during the search and therefore the Court ordered them to do so by March 3, 2011. *Id.* The Court then took both motions under submission.

## II. THE GOVERNMENT'S MOTION FOR RECONSIDERATION

### A. Legal Standard for a Motion for Reconsideration.

The Federal Rules of Civil Procedure do not formally recognize a "Motion for Reconsideration." Out of judicial necessity, our courts have developed an approach to evaluate such a motion. The Fifth Circuit treats a motion for reconsideration as "either a motion 'to alter or amend' under Rule 59(e) or a motion for 'relief from judgment' under Rule 60(b)." *Id.* at 173. The Fifth Circuit holds that, "if the motion is served within ten (10) days of rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b)." *Id.* Here Defendants filed their Motion for Reconsideration within 10 business days of the December 21, 2010 Judgment, so shall be treated as a Rule 59(e) Motion to Alter or Amend.

Alteration or amendment of a previous ruling under Rule 59(e) "calls into question the correctness of a judgment." *Tremplet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004). This specific motion serves "the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (internal quotations omitted). It may also be used to prevent manifest injustice. *Flynn v. Terrebonne Parish School Bd.*, 348 F.Supp.2d 769, 771 (E.D.La. 2004). As such, it must be used sparingly. *Clancy v. Employers Health Ins. Co.*, 101 F.Supp.2d 463, 465 (E.D.La. 2000).

### B. The Government's Arguments in Support of its Motion for Reconsideration

Here the Government argues that the Court's previous order contained several errors of fact and law regarding the circumstances of the search of 2000 Belle Chasse Highway, which the Government argues would have been corrected if the Court had held an evidentiary hearing before issuing its previous order.

*1.     The FBI never saw the directory.*

The Government contends that the FBI agents conducting the search did not ignore the first floor directory because they used the stairs and never saw the directory. (Rec. Doc. 31 at 5). However, this argument is unconvincing for three reasons. First, as the Court has visited the site, the directory is quite visible from the stairs that the FBI used on the day of the search. (Rec. Doc. 38). Second, FBI agents clearly used the elevator over the course of the lengthy search, and the elevator is directly next to the directory. (Rec. Doc 42 at 8). Third, the affidavit of Special Agent Bezet indicates that the only occupied office space in 2000 Belle Chasse Highway was on the third floor; however, having visiting the site, the only access to the first floor office space is directly next to the directory on the first floor. So in order for Agent Bezet to have ascertained that the first floor was unoccupied, he must have looked into the office window, which was less than one foot away from the directory he claims he never saw. In light of the above, the Court finds it very unlikely that none of the FBI agents saw the directory over the course of the search.

*2.     There was no third-floor directory.*

The Government further argues that this Court committed an error in fact when it held that the FBI had ignored a third-floor directory. (Rec. Doc. 31 at 5). The Government claims that there was no directory on the third floor, and therefore the Court's decision was based on an erroneous understanding of the facts of the search. *Id.* However, a review of this Court's Order and Reasons quickly reveals that the Government has simply misunderstood this Court's order. The order states

4

that, "[d]espite the third floor directory, discussions with Mr. Manzella and Petitioner Heebe's counsel, and labels indicating separate and distinct businesses on the same floor, the Government failed to limit its search in any way and seized numerous documents and other property from parties not described in the warrant." (Rec. Doc. 22 at 5). In this context, the "third floor directory" does not refer to a directory on the third floor, but rather the directory on the first floor, which lists the businesses on the third floor. As a result, this Court was not mistaken about the presence of a third floor directory, the Government simply misunderstood this Court's Order.

       *3.*      *There were no clearly marked documents or file cabinets,*

The Government also argues that the Court erred by holding that, "[the FBI] also ignored the clearly marked documents and file cabinets." The Government points to Agent Bezet's affidavit, which states that none of the offices had any separate identifying information. (Rec. Doc. 31 at 5). Having visited the site, it is clear that while the offices themselves were not labeled, the filing cabinets and files typically were clearly labeled. Moreover, the law office of Peter Butler was clearly separate from the "offices of River Birch Landfill" and yet the FBI searched his offices anyway.

In fact, the Government has admitted that the entire reason a "privilege team" was present at the search was because they knew that Peter Butler maintained an office at 2000 Belle Chasse Highway and were concerned that information seized from his office would likely contain privileged files relating to his other clients. (Rec. Doc. 48 at 8). Therefore it is obvious that to the extent that the Government seized materials from that office, they ignored clear signs that the law office of Peter Butler was not "the offices of River Birch Landfill."

Finally, there were several boxes that were clearly labeled "confidential attorney-client privileged information," which were nevertheless seized from room "O". (*Compare* Gov. Photo 64

5

*with* Photo 126; *see also* Rec. Doc. 51-1).

    *4.*    *Credibility determinations were made without an evidentiary hearing.*

The Government further argues that this Court erred by giving credence to the affidavit of Mr. Manzella without a full evidentiary hearing. (Rec. Doc. 31 at 6). Mr. Manzella was the computer specialist who informed the FBI of the distinct contents of the various computer servers at 2000 Belle Chasse Highway. However, the Government does not dispute the fact that Mr. Manzella informed them of the distinct nature of the servers, and the FBI technical team independently confirmed Mr. Manzella's information. (Rec. Doc. 31 at 6). So, in fact, there is no factual dispute that Mr. Manzella informed the FBI that several companies other than River Birch Landfill used the servers in 2000 Belle Chasse Highway. Therefore it was perfectly acceptable for the Court to rely on undisputed affidavits in holding that the FBI was on notice that there were other tenants at 2000 Belle Chasse Highway. (*See e.g., U.S. v. Fontenot*, 2009 WL 3785712 *1 (W.D.La. 2009)("an evidentiary hearing is not a prerequisite for a ruling on every Rule 41(g) motion"); *U.S. v. Albinson*, 356 F.3d 278, 282 (3d Cir. 2004)(holding that while Rule 41(g) directs a district court to "receive evidence on any factual issue necessary to decide the motion," affidavits and documentary evidence can be sufficient to support such a determination)). Despite this knowledge, the FBI did not limit its search to "the offices of River Birch Landfill," which justifies a finding of "callous disregard."

    *5.*    Garrison *does not support a finding of "callous disregard."*

The Government argues that this Court committed an error of law in holding that *Garrison* supports a finding of "callous disregard." (Rec. Doc. 31 at 7). The Government reiterates that there were no labels or signs to indicate different offices except for the self-serving statements of employees.

In *Garrison* the Supreme Court specifically held that "if the officers had known, or even if they should have known, that there were two separate dwelling units...they would have been obligated to exclude respondent's apartment from the scope of the requested warrant." 480 U.S. at 86. Unlike the police in *Garrison*, in this case the FBI took no specific steps to determine the identity of the occupants on the third floor of 2000 Belle Chasse Highway before obtaining a search warrant listing the entire building. 480 U.S. at n.10. Special Agent Smith testified that the FBI searched the business records maintained by the Louisiana State Secretary of State, which clearly indicate the presence of other businesses located at 2000 Belle Chasse Highway. (Rec. Doc. 65 at 6). Despite learning this information, the FBI failed make any further inquires to determine the identities of these tenants. *Id.* at 10. Had the FBI conducted even a basic search of the Louisiana Secretary of State's records, it would have discovered several businesses located at 2000 Belle Chasse Highway that were not described in its search warrant. *Id.* at 7. Moreover, Agent Smith testified that he knew that Peter Butler maintained a law office at 2000 Belle Chasse Highway and yet his business was not listed on the search warrant. *Id.* at 8. Agent Smith testified that the FBI believed that Mr. Butler worked as an in-house attorney for River Birch and was therefore covered by the warrant as issued. *Id.* at 9. However, no independent efforts were taken to determine whether Mr. Butler was in fact employed by River Birch, or whether he was merely leasing space in order to run an independent legal practice. *Id.* Moreover, the Government knew beforehand that Willow, Inc. was also a tenant of 2000 Belle Chasse Highway, but did not exclude that office from the scope of the requested warrant. *Id.* at 8.

In light of the clear indications available to the FBI that there was more than one tenant at 2000 Belle Chasse highway, combined with the FBI's lack of effort in verifying which tenants occupied the third floor, this Court finds no reason to amend its previous finding of "callous

disregard." *See Garrison*, 480 U.S. at 86 n. 10 (justifying the police's "honest mistake" in part by noting that the police officer in that case had gone to the length of checking with Baltimore Gas and Electric Company to verify who was listed for the third floor and was given only one name, despite the fact that there were two apartments on the third floor).

Furthermore, in *Garrison* the Supreme Court held that the validity of the execution of a search "depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." 480 U.S. at 88. Here it is clear that the FBI's failure to realize the overbreadth of the warrant was objectively unreasonable in light of the circumstances of the search. While the Government adamantly claims that the offices at 2000 Belle Chasse Highway were not clearly distinguished, they clearly knew that Peter Butler had a separate law office at 2000 Belle Chasse Highway. They also knew that Willow, Inc. also had offices there. Despite this knowledge, the FBI has provided no evidence that it took any steps whatsoever "to ascertain and identify" the place to be searched. Furthermore, during the search the FBI was warned by various employees about the presence of several distinct companies on the third floor. While the Government argues that these self-serving statements of employees did not put the FBI on reasonable notice of the overbreadth of its warrant, *Garrison* seems to suggest otherwise. 480 U.S. at n. 12 (noting that the failure of the tenant to inform the police of the presence of a separate apartment contributed to police's reasonable belief that there was only one apartment on the third floor).

Finally, in holding the search in *Garrison* valid, the Supreme Court relied on the fact that the police limited their search once they discovered the presence of a second apartment on the third floor. 480 U.S. at 87. In *United States v. Perez*, the Fifth Circuit confronted a search quite similar to the one of 2000 Belle Chasse Highway. 484 F.3d 735. In *Perez*, the FBI obtain a search warrant

8

for a home that they believed housed a child pornographer. While executing that warrant the FBI discovered that the house was shared by three house mates. Because the FBI only had evidence implicating one of the house mates, they limited their search to areas used by that house mate. 484 F.3d at 742. As in *Perez*, the FBI only had evidence implicating one of the businesses at 2000 Belle Chasse Highway, but unlike *Garrison* or *Perez*, the FBI has produced no evidence suggesting that it took any steps to limit its search to those areas used by River Birch Landfill.

   *6.  No AUSA was present during the search.*

  The Government also argues that the Court erred by suggesting that the AUSA should have been on notice that there were potential defects in the warrant. (Rec. Doc. 31 at 7). The Government points out that no AUSA was present during the search and therefore he could not have known that the search had exceeded the scope of the warrant. (Rec. Doc. 31-1). While it may be true that no AUSA was present at the search, this factual error does not change the legal conclusion that someone in a supervisory position, be it an AUSA or a supervising FBI agent, had sufficient evidence to realize that a general search of the entire third floor could be unconstitutionally excessive.  *7.  Plaintiffs were not irreparably damaged because the FBI used a "taint team."*

  Finally, the Government argues that the Court erred by holding that Plaintiffs were irreparably injured by the seizure of attorney-client privileged documents. (Rec. Doc. 31 at 8). The Government argues that Plaintiffs have suffered no injury because the investigators have used a "taint team" similar to the one used in *In the Matter of the Search of 5444 Westheimer Road Suite 1570, Houston, Texas*. 2006 WL 18881370.

  However, the "taint team" procedure used by the FBI in this case is quite distinguishable from that used in *In the Matter of the Search of 5444 Westheimer Road*. In that case the "taint team" reviewed all of the materials and returned the materials it found privileged. 2006 WL 1881370 *2.

Critically, before the taint team turned over any materials to the prosecution team, the plaintiffs in that case were allowed to review and challenge the taint team's privilege determination. *Id.* Here the investigation team and clean team conducted the search simultaneously. The "taint team" primarily searched the offices of Peter Butler and also reviewed materials given them by the investigatory team. (Rec. Doc. 48 at 10). However, as Agent Bezet testified, individuals not on the "taint team" were responsible for identifying privileged materials and instructed to bring such materials to the "taint team" only after they had determined that the materials were potentially privileged. Critically, these individuals were not instructed on how to identify privileged documents without reading the content of those documents. As a result, the initial determination that a document was potentially privileged involved the examination of the document by individuals not on the "taint team," thus threatening any privilege contained in those documents.

The facts of the present case are also distinguishable from those in *In Re: Search of Law Office, Residence and Storage Unit of Alan Brown*. 341 F.3d 404. In that case the Fifth Circuit held that because the Government had given the plaintiff unfettered access to all seized records, the plaintiff could not rely on vague allegations of violations of attorney-client privilege to show the irreparable injury required for granting a motion for return of property under Rule 41(e).[1] *In Re:*

---

[1] Rule 41(e) was amended in 2002 to become Rule 41(g). That amendment did not change the substance of Rule 41(e), with the exception that Rule 41(g) omits that last sentence of Rule 41(e): "[i]f a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12." That sentence was moved to Rule 41(h), which now provides, "A defendant may move to suppress evidence in the court where the trial will occur, as Rule 12 provides."

As a result of this change, the Fifth Circuit has held that Rule 41(g) does not authorize the suppression of evidence in all but the most exceptional cases of irreparable harm. *In Re: Search of Law Office, Residence and Storage Unit of Alan Brown,* 341 F.3d 404, 412-14 (5th Cir. 2003)(Citing as an example, a case where the FBI has created a file on someone based on illegal evidence, and the presence of the file itself caused irreparable harm).

*Search of Law Office, Residence and Storage Unit of Alan Brown,* 341 F.3d 404, 414 (5th Cir. 2003). However, in this case the Government had not given Plaintiffs any access to the seized evidence until after the evidentiary hearing. As a result of Plaintiffs' involuntary ignorance as to the full extent of privileged information seized by the FBI, and in light of serious deficiencies with the FBI's "taint team" procedure, Plaintiffs have shown irreparable injury sufficient to justify the return of their property, or at least copies of their property.

It should be noted that the Court also based its finding of irreparable injury on the fact that the seizure of various documents and computers would interrupt legitimate business operations of the various companies with offices in 2000 Belle Chasse Highway. (Rec. Doc. 22 at 7). This conclusion is supported by *In Re: Search of Law Office, Residence and Storage Unit of Alan Brown*, which held that since the Government had returned the originals of the seized documents at issue in that case, the plaintiff could not complain of irreparable injury due to his inability to conduct a legitimate business. 341 F.3d 404, 410 (5th Cir. 2003) (citing *Hunsucker v. Phinney*, 497 f.2d 29, 35 (5th Cir. 1974); *see also Sealed Appellant v. Sealed Appellee*, 199 F.3d 276, 278 (5th Cir. 2000) (pointing out the lack of a business need for return of property when copies of seized items had already been provided). Here the FBI had not provided Plaintiffs with copies of the documents and computers that had been seized, which resulted in disruption to Plaintiffs' legitimate business operations, necessitating an order for a return of copies of all seized items in order to avoid irreparable injury.

**C.     The Court's Conclusion**

The Government has not shown that this Court needs to correct any manifest errors of law or fact or consider any newly discovered evidence. There was ample evidence before the Court to

.
.
.
.

justify the its earlier Judgment. The new evidence presented has only provided further support for this Court's original decision. For instance, it is now clear that the "taint team" was only present because the Government knew that Peter Butler maintained a law office at 2000 Belle Chasse Highway. They then searched his offices, despite their not being "the offices of River Birch Landfill." It is also clear that the FBI officers used the elevator and therefore were in direct proximity to the directory on the first floor, which provided even more notice that the search needed to be limited.

It should be noted that this order does not take any position on the question of whether any of the evidence seized at 2000 Belle Chasse Highway should be suppressed at any eventual trial. The Fifth Circuit has been clear that an order of suppression is very rarely justified under Rule 41(g), and this case is not one of those rare circumstances.

### III.  PLAINTIFFS' MOTION TO ENFORCE JUDGMENT

Plaintiffs request that, pursuant to Federal Rule of Civil Procedure 70, this Court order the Government to comply with its earlier Judgment, hold the Government in contempt for failing to comply with this Court's order, and award Plaintiffs attorneys' fees and costs. (Rec. Doc. 36).

**A.     Legal Standard for Rule 70 Motion to Enforce Judgment**

Rule 70 of the Federal Rules of Civil Procedure provides:

(a) Party's Failure to Act; Ordering Another to Act. If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done--at the disobedient party's expense--by another person appointed by the court. When done, the act has the same effect as if done by the party.
...
(e) Holding in Contempt. The court may also hold the disobedient party in contempt.

Fed. R. Civ. P. 70(a).  A finding of contempt is appropriate when a movant shows by clear and convincing evidence that: 1) a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order. *Whitcraft v. Brown*, 570 F.3d 268, 271 (5th Cir. 2009) (*citing Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).

### B. Plaintiffs' Arguments in Support of their Motion to Enforce Judgment

*1.    The Government has failed to return all non-River Birch property.*

Plaintiffs claim that as the Government has only returned four out of 25 boxes of seized evidence, then it must still retain non-River Birch material.  (Rec. Doc 36-1 at 5).  As further evidence that the Government retains non-River Birch evidence, Plaintiffs list several documents that are still unaccounted for.  *Id.*  Finally, Plaintiffs point out that it is difficult for them to know if the Government has returned all non-River Birch property because the Government's search warrant receipt is both vague and inaccurate.  *Id.*  The Government claims that it has not retained any non-River Birch property and that the small percentage of returned documents attests to the fact that the FBI did their best to seize documents that belonged only to River Birch in the first place. (Rec. Doc. 41 at 3).

The Court agrees that it is very difficult to tell if the Government had in fact retained any non-River Birch material.  There are just too many documents and too many companies to keep straight.  However, the fact that the Government has only returned four of 25 boxes of material does not in itself mean that the government held back documents that it should have returned.  As a result, Plaintiffs have failed to establish that the Government is in violation of this Court's order.  The Court also notes that any issues about the Government's vague search warrant receipt are moot in

light of this Court's order requiring the Government to produce copies of everything seized during the search of 2000 Belle Chasse Highway.

        2.     *The Government has improperly retained copies of Non-River Birch material*

Plaintiffs maintain that the Government has violated this Court's order by retaining copies of non-River Birch material. As mentioned earlier, under Rule 41(g), suppression of evidence is very rarely authorized. The Fifth Circuit has specifically held that the Government can retain even illegally seized materials because the victims of such seizure have other adequate remedies at law, such as *Bivens* actions and motions to suppress in any eventual criminal trial. Therefore, Rule 41(g) only authorizes the return of property, it does not require the Government to refrain from keeping copies of that property. While this Court ordered the Government to return Plaintiffs' property it also allowed the Government to retain copies of seized materials. (Rec. Doc. 22 at 7) ("By copying all seized, unprivileged documents and data, and returning originals, the Government can resume its investigation while mitigating further irreparable injury to Petitioners."). As this Court has already ordered the return of Plaintiffs' property, and Plaintiffs have not shown that their property has not been returned, then the Government is not in violation of this Court's order.

        3.     *The Government has failed to return clearly privileged documents.*

Plaintiffs complain that the Government has not returned attorney-client privileged material that was prepared in response to the Government's current investigation. (Rec. Doc. 36-1 at 7). Moreover, Plaintiffs argue that although this Court ordered the Government to complete its "taint team" review, the Government has not followed its own clean team procedures. *Id.*

The Court finds this argument premature. The Government has been ordered to provide copies of everything seized during the search of 2000 Belle Chasse Highway. Indeed this disclosure is one step of the Government's "taint team" procedure. If Plaintiffs can find privileged documents

14

and the Government refuses to return those documents after a specific request to do so, then Plaintiffs are free to file a new motion. However, without specific documents to examine the Court is unable to render a decision on this matter.

**C.     Conclusion**

As Plaintiffs have not presented any clear and convincing evidence that the Government has violated a specific order of the court, the Government should not be found in contempt. The Government is now following the "taint team" procedure by giving Plaintiffs access to all retained materials so that Plaintiffs have an opportunity to challenge the Government's privilege determinations. Moreover, the Government did not violate this Court's order by keeping any copies, because under Rule 41(g), and this Court's order, it is entitled to keep copies of seized materials.

## IV.  CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Rule 41(g) Evidentiary Hearing in Reconsideration of Order to Return Seized Documents is DENIED.  (Rec. Doc. 31).

IT IS FURTHER ORDERED that Plaintiffs' Motion to Enforce Judgement is DENIED. (Rec. Doc. 36).

New Orleans, Louisiana, this 1st day of July, 2011.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE