UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HEEBE, ET AL. | * | CIVIL ACTION No: 10-3452 |
| | * | |
| v. | * | SECTION C |
| | * | |
| UNITED STATES OF AMERICA | * | JUDGE HELEN G. BERRIGAN |

**ORDER & REASONS[1]**

Before this Court is a Motion to Compel Defendant ("Government") to Comply with the Court's Prior Orders by Plaintiffs, Frederick R. Heebe, Shadowlake Management, LLC, Fred Heebe Investments, and Live Oak Homes Corporation (hereinafter "Plaintiffs"). (Rec.Doc. 79). Plaintiffs request that the Government return copies of all privileged documents pursuant to this Court's Order of December 20, 2010. (Rec.Doc. 22). Plaintiffs also request that the Government return copies of all seized documents pursuant to this Court's February 24, 2011 Order, which granted the Government a one week extension for return of privileged documents and also ordered that copies of all documents, including those not privileged, be given to plaintiffs. (Rec.Doc. 62). Finally, plaintiffs ask that a protocol be implemented for the segregation and return of privileged documents. Having considered the record, applicable law, and memoranda of counsel, this Court PARTIALLY GRANTS AND PARTIALLY DENIES this Motion.

---

[1] Rebekka Veith, a second-year student at Tulane University Law School, contributed to the research and preparation of this order and reasons.

1

**Background**

On September 23, 2010, members of the Federal Bureau of Investigation executed a search warrant, authorized by United States Magistrate Judge Louis Moore, Jr, for the "offices of River Birch Landfill... located at 2000 Belle Chasse Highway, Gretna, Louisiana, 70056." (Rec.Doc.3-3, Ex. A). In December of 2010, this Court granted a motion for return of property seized by the Government during this search. (Rec.Doc. 22). In its Order, this Court noted that the Government's search of 2000 Belle Chasse Highway was objectively unreasonable and displayed a "callous disregard" for Fourth Amendment privacy rights. (Rec.Doc. 22 at 5). This Court concluded that the only "adequate remedy" available to petitioners whose property was seized was "either the return of seized property or at least copies of seized data sufficient to resume Petitioners' daily business operations." (Rec.Doc. 22 at 8). The Government was given one week, until December 27, 2010, to complete a "clean team" review and return privileged documents to petitioners. (Rec.Doc. 23). On February 24, 2011, this Court conducted an evidentiary hearing in reconsideration of its Order to return seized documents, and at the conclusion ordered the Government to provide plaintiffs with "copies of everything taken" during the search of the River Birch property by March 3, 2011. (Rec.Doc. 62 at 2). Because it appears that Government is still not in full compliance with either of these orders, a protocol must be established to provide for documents at issue to be copied and returned. Plaintiffs and the Government propose different protocols for the copying and return of these documents. Plaintiffs' is as follows:

     For Hard Copy Documents:
     1.     Defendant, if it has not done so already, will have a vendor brand each

      document with a unique Bates-stamp number.
2. Defendant will provide a copy set of the Bates-stamped documents to Plaintiffs.
3. Plaintiffs will provide a privilege log to Defendant identifying each privileged document by Bates-stamp number(s).
4. Defendant will segregate and seal all copies of the listed documents without reviewing the substance.  For each listed document, Defendant will maintain a record of which government attorneys or agents have had possession of or access to the document.
5. If, based on the log, Defendant does not dispute a privilege assertion, it will return all copies of that document to Plaintiffs.
6. If, based on that log, Defendant disputes a privilege assertion, the parties will meet and confer in an effort to resolve the dispute.
7. The Court will decide any unresolved privilege documents.

For Electronic Documents:
1. Defendant may not review the substance of the electronic evidence in the first instance, but may review file names or conduct electronic searches to identify documents for a substantive review.
2. Before conducting a substantive review, Defendant must first provide a copy of the review set to Plaintiffs.  The parties will negotiate the processing and formatting of the documents as well as a method to identify the documents with unique numbers, such as by creating single-page TIFF images of the documents with unique Bates-stamp numbers.
3. Plaintiffs will review the documents and provide a privilege log to Defendant identifying each privileged document.
4. Defendant may proceed to review the documents not listed on the privilege log.
5. If, based on the log, Defendant does not dispute a privilege assertion, it will destroy, segregate, or return all copies of that document.
6. If, based on the log, Defendant disputes a privilege assertion, the parties will meet-and-confer in an effort to resolve the dispute.
7. The Court will decide any unresolved privilege disputes.
8. Defendant will maintain an audit trail of persons who have accessed electronic files.

(Rec.Doc. 79-1 at 6-7).

The Government's proposed protocol, which has been in place since the August 23, 2010 search, is as follows:

    a. Peter Butler, Sr. is an attorney who is licensed to practice in the state of Louisiana.  Butler maintains an office within [River Birch Landfill's] administrative office.  Consequently, some of the information seized

3

        may relate to his clients and be subject to an attorney-client privilege. Nevertheless, every effort will be made not to gain access to privileged information. Therefore, the investigators will utilize other Agents, FBI employees, and an Assistant United States Attorney, as a "Privilege Team," to view any potentially privileged material.

   b.    A "Privilege Team" of FBI Agents and other employees will be used to search the premises and non-privileged materials responsive to the warrant will be provided to the Assistant U.S. Attorneys assigned to the "Prosecution Team." Any suspected privileged materials will be collected by the "Privilege Team." A custodian will be designated to segregate alleged privileged materials, a computer forensic analyst will extract information from the computer storage systems and digital media, and an Assistant United States Attorney assigned to the "Privilege Team" will review the extracted information to determine whether such materials are, in fact, privileged. Members of the "Privilege Team" will not be involved in the investigation and will be instructed not to discuss the case or materials with any members of the "Prosecution Team."

   c.    If any materials appear to be so privileged, such materials will be segregated by the forensic analyst and will be designated as such. The privileged materials will not be revealed in any way to members of the "Prosecution Team," including the prosecutor, case agent, or any other material witnesses. The privileged materials will be returned Peter Butler, Sr.

   d.    The "Privilege Team" will forward to the "Prosecution Team" any and all materials that are not privileged materials.

   e.    If the "Privilege Team" disagrees on whether or not certain materials are privileged, such materials will be submitted to a United States District Court Judge for a ruling as to whether the privilege applies and/or whether the materials fall within any exception to the attorney-client privilege.

   f.    The arguable privileged materials retained by the "Privilege Team" will not be shown to the "Prosecution Team" unless and until a Judge determines that the materials are not privileged or fall within any exception to the attorney-client privilege.

   g.    Computer files will be initially examined by the "Privilege Team" to determine relevance and privileged status in accordance with the above-described procedure.

(Rec.Doc. 93 at 5-6).

In addition to their proposed protocol, plaintiffs also urge this Court to reject the Government's use of a "Privilege Team," which plaintiffs refer to as a "taint team," but is

also referred to in this Order as a "clean team." (Rec.Doc. 79-1 at 10-11).

## Law and Analysis

This Court has considered both parties' proposals for document return protocol, and has determined, based on these proposals and applicable law, the method for segregating and returning privileged documents that best suits these circumstances. Plaintiffs and the Government disagree on three important issues: whether a clean team may be used, whether the Government must Bates-stamp the electronic information in their possession in addition to Bates-stamping hard copies of documents, and whether the Government must maintain a record of who has possession of or access to potentially privileged documents.

### I. Use of a Clean Team

A "clean team" consists in this case of FBI agents, an Assistant United States Attorney and other employees who are not involved in the investigation of the plaintiff, and whose task is to identify potentially privileged documents and then segregate these documents from non-privileged material. (Rec.Doc. 93 at 5). The plaintiffs' memorandum notes that clean teams are often discouraged or rejected by courts. (Rec.Doc. 79-1 at 11-12). And in fact, this Court has determined that the "taint team" procedures used by the Government during the search of plaintiffs' offices caused "irreparable injury" to the plaintiffs. (Rec.Doc. 74 at 9-11). However, clean teams are appropriate in "limited, exigent circumstances in which the government officials have already obtained the physical control of potentially privileged documents through the exercise of a search warrant." *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006). This is precisely what has happened in the case at hand, and thus the use of a clean team to make initial privilege determinations will be appropriate if the proper procedure is used. Case law

suggests that a clean team using the proper procedure will review documents and distinguish those which are potentially privileged from those which it believes are not privileged, at which point the party to whom the documents belong is able to review the documents and "identify any objections." *United States v. Grant,* 2004 WL 1171258 at *1 (S.D.N.Y. May 25, 2004). In this case, because plaintiffs have agreed to pay for Bates-stamping of all hard copies of documents in the Government's possession, the Government must return original hard copies, along with Bates-stamped copies of these documents to plaintiffs, as well as their privilege determinations. The Government will maintain Bates-stamped copies of these documents in order to make those privilege determinations.

The Government proposes that after their "privilege team" designates potentially privileged materials, the Assistant United States Attorney on the team "will review the extracted information to determine whether such materials are, in fact, privileged." (Rec.Doc. 48 at 9). After that privilege determination is made, the materials will be returned to plaintiffs. *Id.* But again, case law suggests that the proper method for determination of privilege is actually that the clean team will identify and return to the original owner all documents that are "potentially privileged". *In re Search of 5444 Westheimer Road Suite 1570,* 2006 WL 1881370 at *2 (S.D.Tex. July 6, 2006). If a document that is believed by its original owner to be privileged is not designated as such, that dispute should be heard before a court before the document is turned over to any prosecution team. *Id.*

Here, the Government's procedure as it is currently set out does not appear to allow plaintiffs to dispute their determination. (Rec.Doc. 48 at 9). Step "d" of the procedure provides that "The 'Privilege Team' will forward to the "Prosecution Team" any and all materials that are

6

not privileged materials." *Id.*   Step "e" states that if the "Privilege Team" disagrees on whether or not certain materials are privileged, those materials will be submitted to a United States District Court Judge.  *Id.*   This seems to suggest that if all the members of the privilege team agree that a document is not privileged, it will be sent to the prosecution team without allowing the plaintiffs a chance to disagree with the determination.  It then seems to suggest the Court will decide internal disputes among the "privilege team," but plaintiffs will not have their own chance to bring disputes.  To the extent that step "e" does not allow for plaintiffs to bring privilege disputes for hard copy documents, the Court does not endorse the Government's protocol because it is not proper.   Plaintiffs must have a chance to dispute privilege determinations made by the clean team.

Thus, the Government may use their clean team to make privilege determinations but the proper protocol will allow for plaintiffs to make challenges to privilege determinations, first in a meet-and-confer session with both parties present, and then in front of this Court if the dispute is not resolved, before the potentially privileged documents are submitted to the prosecution team.

**II. Bates-stamping**

Plaintiffs have requested that the Government "brand each document with a unique Bates-stamp number" and provide a copy set of these stamped documents to the plaintiffs. (Rec.Doc.79-1 at 7).  The Government has agreed to Bates-stamp the hard copy documents in their possession if plaintiffs will pay for the Bates-stamping. (*Id.* at 8-9).  Plaintiffs have agreed to pay for Bates-stamping both hard-copy and electronic documents. (Rec.Doc. 93-4).  In spite of this, the Government refuses to Bates-stamp the electronic documents in their possession. (Rec.Doc.79-1 at 8-9).  Because the Government has agreed to Bates-stamp the *hard copy*

documents if plaintiffs pay for this service, and because plaintiffs has agreed to pay for the service, the Government shall Bates-stamp these hard-copy documents.  Plaintiffs plan to provide the Government with a privilege log when they have received the Bates-stamped copies of documents in the Government's possession.  (Rec.Doc.79-1 at 7).

Plaintiffs maintain that unless *electronic* documents are Bates-stamped, they will only be able to identify potentially privileged documents in a privilege log by "date, author and recipient, to the extent that information exists." (Rec.Doc 79-1 at 14).  A privilege log ordinarily must also contain a description of the subject matter of the document and provide an explanation for why the document is privileged. *Jones v. Hamilton County Sheriff's Dept.*, 2003 WL 21383332 at *4 (S.D.Ind. June 12, 2003).  If plaintiffs still possess the original hard-drives that were copied during the search, then they will be able to create a privilege log for the Government using the information on these hard-drives.  Although plaintiffs have agreed to pay for the Government to Bates-stamp all of the electronic documents, the Court finds that its solution will create less waste than requiring the Government to Bates-stamp the 4.7 terabytes of information in its possession. (Rec.Doc.78 at 189).  However, if plaintiffs no longer have these hard-drives or copies thereof, then the situation becomes analogous to that of the hard-copy documents, as plaintiffs do not possess the same information that the Government does.  If this is the case, the Government shall provide Plaintiffs with copies of all of the hard-drives in their possession or agree to Bates-stamping of the electronic information.

### III. Maintaining a Record of Who Accesses Potentially Privileged Documents

Plaintiff also asks that the Government maintain a record of which Government attorneys or agents have had possession of or access to the privileged documents (Rec.Doc.79-1 at 17).

The Government argues that doing this might "allow a potential criminal defendant to obstruct and thwart the investigations." However, the United States District Court for the District of Columbia has noted, in *United States v. Neill* that:

> "Where the government chooses to take matters into its own hands rather than using the more traditional alternatives of submitting disputed documents for *in camera* review by a neutral and detached magistrate or by court-appointed special masters, it bears the burden to rebut the presumption that tainted material was provided to the prosecution team."

*United States v. Neill*, 952 F.Supp 834, 841 (D.D.C. 1997). In *Neill,* the court found that because the prosecution team testified that it had received no privileged information, and no evidence existed to show that the "taint team" had disclosed information to the prosecution team, the Government had shown that, in fact, no tainted material was provided to the prosecution team. *Id.* at 842.

Here, as this Court has noted, the clean team process was corrupted during the on-site search, when individuals not on the clean team handled potentially privileged materials. (Rec.Doc.74 at 9). It is thus proper under *Neill* for this Court to require that the Government maintain a log of which prosecutors and Government agents had access to the potentially privileged materials in order to prevent further corruption. And it is worth noting that in this case, plaintiffs maintain that they do not want a copy of this record; they request this procedure so that the record may be referenced in the case of an indictment. (Rec.Doc. 94-2 at 10). The Government should not be required to provide to plaintiffs any information that would compromise a criminal investigation, but they must keep this record of who has and has had access to the potentially privileged files. This is mandatory.

## **Conclusion**

Accordingly,

IT IS ORDERED that the protocol for clean team review and privilege determinations and disputes shall proceed as follows:

For Hard Copies of Documents

1. The Government shall Bates-stamp all hard copies of documents in the Government's possession. Plaintiffs shall pay for these costs, as previously offered.
2. Bates-stamped copies of all documents shall be returned to Plaintiffs, along with privilege determinations made by the Government's clean team.
3. Plaintiffs shall review the determinations and agree or dispute, and shall reference the Bates-stamp number to the clean team for each disputed document, if any.
4. The parties shall meet and confer based on the privilege disputes, if any.
5. If no agreement is reached, the privilege disputes shall be brought before this Court.
6. Only after the parties or this Court have resolved a privilege dispute shall the documents that are determined to be non-privileged be sent to the Government's prosecution team.

For Electronic Information

1. Plaintiffs must be in possession of all of the electronic information that the Government has copied. If Plaintiffs are not currently in possession of all of this information, the Government shall provide them with copies.
2. The Government's clean team shall make privilege determinations but will not forward them to the prosecution team until the steps outlined below are taken.
3. Plaintiffs shall create a privilege log or make privilege determinations based on the information in their possession. This log or these determinations shall be submitted to the Government's clean team.
4. The parties shall meet and confer based on privilege disputes, if any.
5. If no agreement is reached, the privilege disputes shall be brought before this Court.
6. Only after the parties or this Court have resolved a privilege dispute shall the documents that are determined to be non-privileged be sent to the Government's prosecution team.

IT IS FURTHER ORDERED that all clean team review by the Government be completed by August 15, 2012, in order to comply with this Court's prior order of December 20, 2010. (Rec.Doc. 22).

IT IS FURTHER ORDERED that the Government shall maintain a record of any Government attorneys or agents who have possession of or access to these potentially privileged documents.

New Orleans, Louisiana, this 27th day of July, 2012.

                                          **HELEN G. BERRIGAN**
                                          **UNITED STATES DISTRICT JUDGE**